IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‛I

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 08-00223 DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID OPOLLO ROSS,      (01); | ) | |
| and LEI LAVARIAS ROSS,     (02), | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER: (1) GRANTING LEI ROSS'S MOTION FOR JOINDER;
AND (2) DENYING MOTION FOR NEW TRIAL

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motions and the supporting and

opposing memoranda, the Court: (1) **GRANTS** Lei Ross's Motion for Joinder; and

(2) **DENIES** Motion for New Trial.  (Docs. ## 218, 219.)

BACKGROUND

The parties are familiar with the facts of this case, and the Court

recounts only those facts pertinent to disposition of the instant motions.

A jury trial began on January 26, 2010.  On February 16, 2010,

Defendants David Opollo Ross ("Ross" or "David Ross") and Lei Lavarias Ross

(collectively, "Defendants") were found guilty of Counts 1 and 2 through 6 of the

Indictment.  (Doc. # 201.)  Count 1 charged Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371 for the tax years 1998 through 2002.  Counts 2 through 6 charged Tax Evasion in violation of 26 U.S.C. § 7201 for willfully failing to file returns for tax years 1998 through 2002.

According to Defendants, they had hired counsel Alan Richey on June 14, 2003 to represent them before the Internal Revenue Service ("IRS") on all tax matters including their personal income tax returns from 1998 through 2002.  (Doc. # 218 Ex. 8.)  Richey's representation included discussions with the IRS on an "offer in compromise."

Defendants were indicted on April 10, 2008.  (Doc. # 1.)  Richey was ultimately hired to be David Ross's counsel for the criminal trial before this Court.

On February 3, 2010, day six of the jury trial, Defendants filed a Joint Proffer of Relevant Evidence with exhibits regarding what Richey had allegedly communicated to Defendants while representing them before the IRS.  (Doc. # 182.)  Defendants believed that the evidence was relevant to why Defendants had failed to come into compliance during the time period in which Richey represented them before the IRS, including discussions over the offer in compromise with the IRS.  (Doc. # 218 at 11.)  Michael Green, counsel for Lei Ross during trial, advanced that Defendants had no intention of raising these issues until IRS revenue

2

officer Orby Groves testified to the proposed offer in compromise during trial.
(Doc. # 218 Ex. 47 at 6.)

Groves testified that Richey informed him on July 1, 2003 that
Defendants wanted to pursue offers in compromise with the IRS.  (Doc. # 218 Ex.
43 at 21.)  Groves testified that he informed Richey that Defendants would first
have to come into "full compliance" in order to file an offer in compromise.
According to Groves, Richey indicated Defendants would file amended tax returns
and that they wanted to come into compliance.  (Id. at 22.)  After several telephone
communications with Richey and David Ross on July 1, 2003 through July 3, 2003
about an offer in compromise and coming into compliance with the IRS,
communication from Richey and David Ross to Groves apparently ceased.  (Id. at
21-25.)  As of the date of trial, there had been no offer in compromise with the
IRS.

The Court held a hearing on this matter out of the presence of the jury
on February 4, 2010.  (Doc. # 218 Ex. 47.)  Both Defendants and their counsel
were present, as was counsel for the Government.  The parties agreed that the
substantive issue was whether Richey, as defense counsel in the trial, could be
called as a witness in the trial proceedings.  It was the Government's position that,
should Defendants rely during the trial on what Richey had told them about

3

coming into compliance with the IRS, Richey's honesty and veracity would become an issue in the case.  (Id. at 4.)  The Government would exercise its right to call Richey as a witness.  (Id.)  The Government opposed Defendants' motion to enter the evidence and requested that there be no testimony about Defendants' conversations with their lawyer.  (Id.)

The Court noted at the hearing that the Indictment and trial pertained to failure to file tax years 1998 through 2002, and that Richey had not been hired until 2003, after the critical elements of the case.  (Id. at 5.)  The Court expressed an opinion that the proffered testimony would be "of marginal relevance with respect to the initial charges."  (Id. at 6.)  The Court stated:  "[W]hat Mr. Richey told his clients or what he didn't tell his clients with respect to offer and compromise is largely irrelevant to the issue in this case because an offer and compromise of a tax liability has nothing to do with whether [Defendants] violated the law earlier. . . . [T]he suggested implication is that somehow because [Defendants] made an offer and compromise, that [Defendants] somehow in doing so acknowledge [their] guilt."  (Id. at 7.)  The Court was further concerned that Defendants not have to call their own lawyer, and effectively waive the attorney-client privilege with respect to these issues.  (Id. at 9.)

4

The Court observed that if Richey had actually told his clients not to testify, then he "might as well turn his law license in because he would have had – he would . . . probably face potential indictment himself for aiding and abetting criminal misconduct."  (Id.)  The Court presumed that the matter of Defendants failing to file "has nothing to do with Mr. Richey," to which Richey shook his head in agreement.  (Id. at 12.)  Richey shook his head and stated "No, Your Honor, their filing of the 2003, 2004, 2005, the testimony regarding this is I didn't have anything to do with - - -."  (Id.)

The Court suggested a solution in order to avoid a mistrial and/or waiver of attorney-client privilege.  After consultation, counsel and Defendants all agreed during the hearing that the solution would be to draft a jury instruction to the effect that evidence about discussions surrounding a potential offer in compromise is not admission of wrongdoing, and then refrain from offering further evidence on the matter during trial.  (Id. at 14.)  The parties and the Court subsequently drafted several versions of a proposed jury instruction.

The final jury instruction (Instruction No. 35) submitted to the jury read:

> You have heard testimony in this case about discussions surrounding a potential offer and compromise with the IRS.  Evidence of offer and compromise is not itself evidence of wrongdoing or admission of guilt

to the underlying charges.  You may consider all other evidence you
may have heard regarding what the defendants did or did not do in
reaching your decision.

(Doc. # 194 at 40.)

On March 15, 2010, David Ross filed the instant Motion for New

Trial.[1]  (Doc. # 218.)  The basis for this motion is ineffective assistance of counsel

due to Richey's alleged conflict of interest.  On March 29, 2010, the Government

filed an Opposition.  (Doc. # 224.)  On April 12, 2010, David Ross filed a Reply.

(Doc. # 226.)  Lei Ross filed a Motion for Joinder to David Ross's motion on

March 15, 2010.  (Doc. # 219.)

STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that "[u]pon the

defendant's motion, the court may vacate any judgment and grant a new trial if the

interest of justice so requires."  Fed. R. Crim. P. 33(a).  A motion for a new trial is

granted at the discretion of the trial court and only in "exceptional cases in which

the evidence preponderates heavily against the verdict."  United States v. Pimentel,

654 F.2d 538, 545 (9th Cir. 1981).

---

[1] On February 22, 2010, the Court granted David Ross's oral motion to
extend time within which to file a motion for new trial until March 15, 2010.
(Doc. # 210.)

In reviewing a motion for new trial, a court "need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992) (internal quotations omitted).  When the court determines that, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." Id. at 1211-12 (internal quotations omitted).

When a defendant moves for a new trial on the basis of ineffective assistance of counsel, the defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's errors, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); United States v. Tekle, 329 F.3d 1108, 1113 (9th Cir. 2003).  As to the first prong of the analysis, "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688.  A defendant who claims ineffective assistance must overcome a strong presumption that his lawyer's conduct was within the wide range of reasonable professional assistance. Id. at 690.  The

7

defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial." Id. at 687.

As to the second prong of the analysis, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. Generally, a defendant must affirmatively prove prejudice. Where counsel is burdened by an actual conflict of interest, however, prejudice may be presumed. Id. (citing Cuyler v. Sullivan, 446 U.S. 335, 345-50 (1980)).

In this context, the defendant is entitled to a presumption of prejudice only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348-50 (1980); see United States v. Miskinis, 966 F.2d 1263, 1268 (9th Cir. 1992); United States v. Hoffman, 733 F.2d 596, 602 (9th Cir. 1984); United States v. White, 174 F.3d 290, 295 (2nd Cir. 1999). This presumption of prejudice may be rebutted. See Rojas-Garcia v. Ashcroft, 339 F.3d 814, 826 (9th Cir. 2003); Singh v. Ashcroft, 367 F.3d 1182, 1189 (9th Cir. 2004); United States v. Feyrer, 333 F.3d 110, 116 (2nd Cir. 2003) (stating that the presumption of prejudice is not conclusive).

## DISCUSSION

David Ross moves this Court for a new trial on the basis that his trial counsel, Alan Richey, had an actual conflict of interest that adversely affected his performance, thereby depriving David Ross of his Sixth Amendment right to effective assistance of counsel.  (Mot. at 1.)  Lei Ross joins in this motion on the basis that she had a direct attorney client relationship with Richey[2] and therefore was also deprived of her Sixth Amendment right to conflict free defense.  (Joinder at 2.)  Lei Ross also joins on the basis that Richey's conflict deprived her of her Fifth Amendment right to a fair trial.  (Id. at 1.)

Defendants contend that when Defendants hired Richey to represent them on their tax matters with the IRS, Richey breached his duties by

> (1) failing to know and advise them on clearly established applicable law; and (2) affirmatively misleading them by giving them incorrect legal advice and then encouraging and assisting them to act on this incorrect advice, thereby causing [Defendants] to continue in their beliefs and fail to come into compliance with their obligations under the law.

(Mot. at 2 (emphasis added).)  Defendants believe that Richey's actions were, at a minimum, unethical.

---

[2] Lei Ross asserts that she and David Ross had an oral joint defense agreement, and therefore an implied attorney-client relationship existed between Richey and Lei Ross.

Defendants assert that Richey's actions while representing them in matters before the IRS resulted in a conflict of interest during trial, which allegedly affected Richey's performance as trial counsel and deprived Defendants of their constitutional rights to a fair trial and effective assistance of counsel in several ways.  First, Richey's advice and their reliance on it "negates [Defendants'] willfulness," which was a matter to be proven at trial.  (Mot. at 2.)  Second, Richey rendered himself unavailable as a witness at trial, thereby depriving Defendants of a material witness.  (Id.)  Third, Richey misled this Court while this Court "issued a ruling premised on the incorrect assumption that Richey advised Ross that he was required to file income tax returns."  (Id. at 2-3.)  Fourth, Richey's silence on these matters resulted in no evidence to oppose the Government's trial theory that Defendants' failure to come into compliance for over six years after hiring Richey was evidence of willfulness.  (Id. at 3.)

In Opposition, the Government argues that evidence of what Richey did or said, assuming such evidence exists, would not change the outcome of the trial.  Trial revolved around the experts and letters that Defendants had relied upon, none of which had anything to do with Richey.  (Opp'n at 4.)  Any further evidence that Richey told Defendants not to file taxes would have been at best cumulative, the Government contends.  The Government asserts that the record

indicates David Ross made a knowing waiver of any right to call his attorney by selecting him as trial counsel.  (Id. at 3.)

Further, the Government asserts that there is no actual conflict between David Ross and Richey because there is evidence that Richey never actually advised Defendants as to their obligation to file taxes.  (Id. at 4.) In a March 9, 2010 e-mail from Richey to defense counsel Lynn Panagakos, Richey stated:  "I never advised David [Ross] to file returns or not file returns.  He relied upon the advice he had already received.  I was trying to get a meeting for him so that the IRS could answer his questions, which is what he wanted."  (Mot. Ex. 1 at 1.)  The Government also believes that Defendants' arguments are more properly submitted as a collateral attack on their convictions in the form of a petition for writ of habeas corpus instead of a motion for new trial.

I.      Allegations and Evidence Submitted in Motion for New Trial

The Court will first address the "new" evidence Defendants purportedly have discovered subsequent to the trial, which Defendants believe would have been presented to the jury had Richey been forthcoming. According to Defendants, Richey made himself unavailable to: (1) introduce e-mails with advice he gave Defendants; (2) testify to advice he gave Defendants; and (3) testify to conversations between Richey and Groves.  (Mot. at 4.)

11

Defendants do not, however, expressly move for a new trial on the basis of newly discovered evidence.  Their motion is framed as a motion for new trial based on ineffective assistance of counsel.  Generally, information supporting a claim of ineffective assistance of counsel is not considered newly discovered "evidence" within the meaning of Rule 33.  United States v. Hanoum, 33 F.3d 1128, 1130-31 (9th Cir. 1994).  The Court will therefore rule on Defendants' allegations and evidence in the context of ineffective assistance of counsel.

The majority of the evidence supplied in Defendants' motion is derived from David Ross's own self-serving declaration.  The exhibits attached to this declaration, in large part, attempt to show that Richey failed to tell Defendants that they should file taxes.  Ross states in his declaration that "Richey did not advise me that [Defendants' opinions that they were not required to file tax returns] were wrong, or that [his] failure to file was not in compliance with the law."  (Ross Mot. Decl. ¶ 9.)  Ross also states that when he inquired whether Richey knew what particular statute made Defendants liable to file taxes, Richey told him that he did not know.  (Id. ¶ 10.)

At Ross's request, Richey said that he could arrange a meeting between Ross and the IRS through the "offer in compromise" procedure.  (Id.

¶ 11.)  According to Ross, "Richey advised [him] that it was not necessary to file tax returns prior to requesting an offer in compromise."  (<u>Id.</u> ¶ 13.)

Exhibits attached to the motion for new trial depict those instances in which Richey allegedly failed to advise Defendants of their need to file taxes.  For example, Ross attaches a copy of an e-mail he apparently sent to Richey, which included three documents from the IRS, the State of Hawaii Department of Taxation, and from Lei Ross to Mr. Townley.  (Mot. Ex. 10.)  These e-mail attachments appear to be merely informational; Ross charges, however, that Richey "did not tell me that there was anything incorrect or improper about the letter that Mr. Townley had drafted for Lei" and that Richey "did not tell them to pay the taxes referenced in the IRS and State of Hawaii notices."  (<u>Id.</u> ¶ 17.)

The motion also attaches another letter sent to David Ross by the IRS in March 2004, apparently in response to correspondence from either David Ross or Richey.  (Mot. Ex. 16.)  This letter states, in part, that "[t]here are people who encourage others to deliberately violate our nation's tax laws.  It would be unfortunate if you were to rely on their opinions. . . . Federal courts have consistently ruled against the arguments you have made.  Therefore, we will not respond to future correspondence concerning these issues."  (<u>Id.</u>)  E-mail

13

correspondence between Richey and David Ross subsequently ensued, regarding conversations with the IRS about offer in compromise.  (Mot. Ex. 17-18.)

David Ross's declaration asserts a number of times that Richey told Defendants that they did not need to file returns to initiate an offer in compromise and that Richey did not know of a statute that made Defendants liable for income taxes.  (E.g., Ross Mot. Decl. ¶ 24.)  These statements are, however, all in the context of the offer in compromise with the IRS and occurred subsequent to hiring Richey in 2003.  The information does not go to why Defendants did not file taxes prior, in 1998 through 2002.

David Ross further claims that Richey "advised [Defendants] to continue to file or not file in accord with the advice and opinions on which [Defendants] had been relying in the prior years" when Defendants inquired if they should file and pay taxes.  (Id. ¶ 35.)  In other words Richey informed Defendants to continue in their course of conduct as they had done in 1998 to 2002.  Although this may go to whether Defendants filed taxes in 2004, this does not go to whether Defendants knew they were required to file in 1998 through 2002, which was the time period of the Indictment.

In an e-mail allegedly from Richey to Ross, dated February 20, 2006, Richey suggested language for David Ross to incorporate into Ross's "statement of

14

beliefs."  This added language included statements alluding to the fact that David

Ross believed that he had abided by every legal requirement and that he cannot

find any law which imposes a duty to pay income tax.  (Mot. Ex. 28.)  This,

according to Defendants, is evidence that Richey encouraged Defendants to

continue in their belief that they did not have to pay taxes.  Additional letters and

e-mails attached to the instant motion demonstrate that Richey advised Defendants

to include similar language regarding statutes imposing tax liability on multiple

occasions.

David Ross states that "Richey told me he could not be a witness for

our defense because he had no admissible evidence to offer."  (Ross Mot. Decl.

¶ 60.)  Richey had apparently informed David Ross that the "judge will not allow

any testimony regarding what I did with you because it is not a defense for you,

and the judge will not let in any testimony regarding the IRS' reaction because,

from his/her perspective, that did not 'cause' you to commit the 'crime.'  Also, I

would not have given you any advice upon which you could have relied during the

years when the crime was apparently committed."  (Mot. Ex. 35.)

Furthermore, David Ross attests that on February 23, 2006, after

meeting with an IRS special agent and Assistant U.S. Attorney, Richey advised

him against filing and paying taxes because "the government would use such filing

against [Defendants]" as evidence that Defendants knew they were required to file. Richey purportedly advised Defendants that they "should keep consistent, that any change in [their] conduct would appear suspicious." (Ross Mot. Decl. ¶¶ 45-46.)

As to the matter of conflict of interest, it apparently did come up between Defendants and Richey before trial. David Ross sent Richey an e-mail inquiring whether Richey had come to any conclusions about any conflicts in Richey's ability to represent David Ross at trial. (Mot. Ex. 38.) David Ross attests that Richey informed him that he had no conflict, and that Richey never asked for David Ross's consent to waive any potential conflict of interest. (Ross Mot. Decl. ¶ 63.) "Mr. Richey never discussed with me the fact that his testimony would have been directly relevant to rebut the government's evidence and argument. To the contrary, . . . Mr. Richey always told me that his potential testimony was legally irrelevant and inadmissible." (Id. ¶ 67.)

Considering the assertions in the motion for new trial and the facts as outline above, the Court will next evaluate whether the foregoing amounts to a violation of the Sixth Amendment.

II.     Lack of Prejudice to Defendants

In order to demonstrate a violation of their Sixth Amendment right to counsel, Defendants must show that counsel's representation was unreasonable,

deprived them of a fair trial, and affected the outcome of said trial.  Because this

Court finds the prejudice inquiry dispositive in this instance, the Court need not

reach the matter of reasonableness.  See Mancebo v. Adams, 435 F.3d 977, 979

(9th Cir. 2006) ("[A] court 'need not determine whether counsel's performance

was deficient before examining the prejudice suffered . . . as a result of the alleged

deficiencies" (quoting Strickland, 466 U.S. at 697).).

A.     Actual Conflict of Interest

Whether Richey labored under an actual conflict of interest in

representing David Ross at trial is not an easy matter to conclude in this case.

Ultimately, it is David Ross's own self-serving statements on which this Court

must rely when considering whether Richey told Defendants not to file taxes.  The

additional evidence in the form of e-mails and letters is of lesser value in this

inquiry because it involves discussions surrounding the offer in compromise with

the IRS, and not the underlying criminal liability that occurred prior to Richey's

hire.  Indeed, an e-mail correspondence from Richey to defense counsel Panagakos

is contrary to David Ross's allegations, and states:  "I never advised David [Ross]

to file returns or not file returns.  He relied upon the advice he had already

received.  I was trying to get a meeting for him so that the IRS could answer his

questions, which is what he wanted."  (Mot. Ex. 1 at 1.)

17

There is, however, at least the suggestion of conflict in this case. Out of an abundance of caution, the Court will consider Defendants' motion under the assumption of an actual conflict of interest. For the reasons set forth below, the Court concludes that granting a new trial is not warranted.

B.      Presumption of Prejudice is Rebutted

Upon review of the record, the trial transcripts, and the evidence and arguments submitted by Defendants in this motion, the Court concludes that any presumption of prejudice is rebutted. The evidence presented by Defendants does not preponderate heavily against the verdict. The Court finds that any conflict Richey may have had did not ultimately affect the outcome or fairness of the trial or Richey's performance and did not affect the overall defense strategy.

1.      Cumulative Evidence

In the first instance, any advice Richey may have given to Defendants is essentially cumulative of the evidence presented by Defendants during trial. David Ross testified for two days, and all defense counsel argued extensively, as to the "expert" advice upon which Defendants relied. That Defendants relied on advice of others, including a lawyer, was the gravamen of their entire defense. Defendants were certainly not deprived of their preferred theory of defense.

18

Nevertheless, the jury, weighing the credibility of the witnesses including David Ross himself, found Defendants guilty.

On February 5, 2010, David Ross testified as to the individuals and information he had relied upon in forming his supposed belief that payment of income taxes are voluntary.  (Doc. # 225.)  Ross testified that he heard from Mr. Arthur Ong that "income taxes are voluntary."  (Id. at 16-17.)  Ross testified that he went to a company called the Research Foundation in 1998 and spoke to LaMarr Hardy to inquire about Hardy's belief that individuals need not pay income tax.  (Id. at 19-26.)  Ross testified as to the conversations he had with Hardy, and to the books and documents Ross reviewed to form his beliefs.  (Id.)  These books included the Webster's Unabridged Dictionary, Black's Law Dictionary, and the Internal Revenue Code.  (Id. at 23.)

Ross also testified as to having relied on other "professionals."  He testified that Defendants agreed to pay the Research Foundation for providing them access to "a number of professionals who had researched this issue.  Some had decades of experience, and [Hardy] said they [were] the ones that ha[d] the courage to put their research down in writing."  (Id. at 29-30.)  Defendants ultimately paid tens of thousands of dollars to the Research Foundation to pay for materials in the

"Deluxe Foundation," written by professionals explaining why individuals do not need to pay taxes.  (Id. at 31-32, 113.)

Various letters, correspondences, and professional opinions were entered into evidence.  One such correspondence was between Hardy and the IRS, wherein the IRS purportedly failed to identify the particular section of the IRS code that makes one liable for taxes.  (Id. at 36.)  The professional opinion of John Rizzo, a Nevada justice of the peace, was entered into evidence.  (Id. at 37, 41.) Ross expressly stated that this opinion from Rizzo, among others, formed his beliefs.  (Id. at 38.)  When Richey questioned Ross if the twenty-page document from Rizzo was "something that, at the time, [Ross] received and [Ross] believed in; [Ross] relied on this," Ross responded "Yes."  (Id. at 39.)  This information was received in 1998.  (Id. at 40.)

Ross attested further to having relied upon testimony and documents from various individuals, some of whom included lawyers and tax accountants. These included, among others: an individual of the Bureau of Internal Revenue; a Nebraska attorney named Guy Curtis; a "legal and tax researcher" named Thomas Smith; tax accountant Michael Kailing; and a tax accountant from the Big Island, Fred Ortiz, who relied on particular sections of the Internal Revenue Code.  (Id. at 49-50, 53, 58, 61-62, 65.)  Defense counsel further offered a letter received by

Ortiz from Senator Inouye's office.  That letter indicated that the Senator's office did not find a statute that "unequivocally makes someone liable to file a return." (Id. at 56.)  A letter purchased by Defendants from Curtis included a purported citation to a commissioner from the IRS and to President Ronald Reagan, alluding to individuals' tax obligations.  (Id. at 59.)  Defense counsel further introduced a letter from one Mr. Williams, arguing that IRS Form 1040 did not comply with the federal Privacy Act and Paperwork Reduction Act and was therefore invalid.  (Id. at 110.)  Defendants paid Kailing for many of the documents upon which they claimed to have relied.  (Id. at 81.)  Defense counsel also introduced case law which Defendants contended proved that taxes are voluntary.  (Id. at 60-61.)  All this information was received by Defendants in 1998 and 1999.

David Ross testified to further information subsequently received, such as oral advice from an attorney named Paul Sula in 2001.  (Id. at 116-19.) Ross stated that he became wary of Sula's advice once Sula refused to put that advice in writing. (Id. at 19.)

Defendants, therefore, offered evidence indicating that they had already formed their alleged good faith belief that taxes were voluntary as early as 1998.  The letters and documents, for which they paid tens of thousands of dollars, were purportedly the basis for their failure to file taxes in 1998 through 2002.

Defendants essentially argue that their reliance on Richey rebuts the Government's arguments that they continued to voluntarily fail to file despite knowing better. But this "good faith" argument was made, and evidence introduced, during trial. David Ross took the stand and testified extensively to why he did not file, and the advice they relied on in 1998 to 2002 not to file. This was considered and rejected by the jury.

The volume of evidence introduced by Defendants as to their alleged good faith reliance was quite substantial. Any evidence that communication with Richey from 2003 onward may have emboldened Defendants' pre-formed beliefs, is, at best, cumulative to evidence of reliance on other "experts" to which David Ross spent two days on the witness stand attesting.

Nor is there any evidence that Richey actually told Defendants not to file taxes. The nearest statement to this effect is Ross's claim that Richey could not tell him the particular statute that requires tax payments. The Court is hard-pressed to conclude that this evidence would have affected the outcome of the case, indeed whether it is even particularly relevant to Defendants' criminal liability. Their arguments, such as the lack of any particular statute requiring tax payment, were raised numerous times at trial, and were rejected by the jury.

The Court therefore concludes that Defendants' argument that their reliance on Richey's advice would have negated the Government's evidence of "willfulness" is unavailing.  Defendants put on ample evidence in an attempt to negate willfulness, which did not persuade the jury.  It is highly unlikely that one additional cumulative witness on that same topic, who would attest to conversations that occurred years <u>after</u> the years for which Defendants were indicted, would have altered the verdict.

2.    <u>Unavailability of Richey as Witness</u>

Similarly, the Court is not convinced that Richey's unavailability as a witness deprived Defendants of a fair trial.  As discussed above, the Court finds Richey's testimony, if indeed he would have given any, to be largely cumulative.  More to the point, however, if Richey's behavior was indeed as Defendants claim, the Court finds it highly unlikely that Richey would have voluntarily offered said information.  It is at least plausible that Richey would have invoked his Fifth Amendment right not to testify, in which case Defendants would have been in the same position as they are now.  This argument therefore fails.  Defendants have not demonstrated that Richey would have either testified as a material witness or offered evidence that would have altered the outcome of this case.  Further, Richey was quite zealous in the conduct of Ross's defense.

3.    Misleading the Court

Defendants contend that Richey misled the Court into believing that Richey had not told Defendants not to pay. This allegation is largely based off of David Ross's own self-serving testimony. From the record, the Court cannot affirmatively conclude at this time that Richey did in fact mislead the Court. Even if Richey were to have violated the rules of professional conduct, the Ninth Circuit has not held that such a violation constitutes ineffective assistance of counsel per se. See United States v. Nickerson, 556 F.3d 1014, 1019 (9th Cir. 2009) ("[W]e hold that an attorney's violation of a rule of ethics or professional conduct before trial does not constitute per se ineffective assistance of counsel.").

Moreover, the silence on Richey's part during the hearing can also be attributed to Defendants. As the Court discussed above, Defendants were present at the hearing on these matters, and Defendants likewise failed to inform the Court that Richey's statements or implied agreement were, allegedly, not accurate.

David Ross could have informed the Court of the conversations he had with Richey, because all the conversations Ross alludes to in his motion had occurred long before trial began. In fact, during the hearing, the Court expressly stated that it presumed that Richey had not told Defendants not to file taxes. While the Court made this statement, and while Richey did not dispute the Court's

24

statement, Defendants sat quietly and did not object.  Richey sat before the Court and his client, and shook his head in agreement in response to the Court's comments  (Doc. # 218 Ex. 47 at 12.)  Richey's verbal and physical responses to the Court's inquiry were made directly in front of Defendants.  Defendants, for their part, sat silently and did not dispute the Court's conclusion.  Having not disputed the alleged misrepresentations made by Richey to the Court during the hearing, Defendants now wish to rely on those alleged misrepresentations to vacate the verdict against them.

Defendants hold Doctoral Degrees in psychology and are sophisticated defendants.  Both were certainly capable of speaking out during the hearing and disputing their counsel's behavior and responses that implied that Richey had never told them not to file taxes.  Lei Ross also had separate counsel present at the hearing.  The evidence in this case and the trial proceedings established that Defendants, particularly David Ross, are quite capable of advocating on behalf of themselves, both before the IRS and during trial.  Instead, after this Court gave Defendants ample opportunity to discuss the situation with their attorneys, both David and Lei Ross agreed that the way to handle this issue was to introduce a cautionary instruction as to offer in compromise.  (Id. at 14.)

Neither at that time indicated that they would prefer the record to reflect that
Richey had, in fact, told them not to file.

Defendants, in essence, tacitly approved of Richey's defense strategy.
Defendants knew of Richey's alleged misstatement to the Court during the hearing
and did not correct the Court's alleged misapprehension.

4.   <u>Waiver</u>

Defendants have also raised the matter of waiver.  They argue that
they did not waive their right to conflict-free resolution.  This issue is unclear, as
David Ross was clearly heavily involved in the work up of this case, participated in
all hearings, sat silently while Richey essentially agreed to the Court's statements
during the hearing, and testified at trial.  There is also e-mail correspondence
indicating that Ross had discussed this matter with Richey and was at a minimum
aware of the possibility that Richey would be unable or unwilling to testify as a
witness.  (Mot. Ex. 37-38.)  The matter is moot, however, because the Court has
concluded that any such alleged conflict did not affect the outcome of the trial.

Accordingly, David Ross's motion for new trial is DENIED.

III.    Collateral Attack Claiming Ineffective Assistance of Counsel

The Court further notes that "the customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255." Miskinis, 966 F.2d at 1269; United States v. Ross, 206 F.3d 896, 900 (9th Cir. 2000). This is because resolution of the matter often requires development of facts from outside the original record. Such a collateral attack may indeed have been the more appropriate action in this case.

This Court has, however, thoroughly reviewed the record and evidence as presented in the motion for new trial and determined that, at this juncture, the verdict shall stay intact.

IV.    Lei Ross's Joinder in Motion for New Trial

Lei Ross seeks the same relief as does David Ross in his motion for new trial, and therefore her motion for joinder is granted. To the extent that Lei Ross relies on the same conflict of interest arguments found in the underlying motion for new trial, those arguments as to Lei Ross likewise fail. Moreover, Lei Ross had her own counsel during trial, despite her claim to having had an implied attorney-client relationship with Richey. To the extent that Lei Ross purports to move for a new trial based on violations of her Fifth Amendment due process right

to a fair trial, her joinder entirely lacks any briefing on that matter, and that issue is not raised in David Ross's motion for new trial.

Accordingly, Lei Ross's motion for joinder is GRANTED, but her request for new trial is DENIED.

<u>CONCLUSION</u>

For the reasons stated above, the Court: (1) GRANTS Lei Ross's Motion for Joinder; and (2) DENIES Motion for New Trial.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 23, 2010.



_____
David Alan Ezra
United States District Judge

<u>United States v. Ross, et al.</u>, CR No. 08-00223 DAE; ORDER: (1) GRANTING LEI ROSS'S MOTION FOR JOINDER; AND (2) DENYING MOTION FOR NEW TRIAL

28